CEPOA-OC                                                                                                04 November 2002

MEMORANDUM FOR CEPOA-DE (Col Perrenot)

SUBJECT: Legal Review - AR 15-6 Investigation of Accident at Family Housing Project at Fort Wainwright, Alaska

1. References:

    a. AR 385-40, Accident Reporting and Records, Dated, 1 November 1994
    b. AR 15-6, Procedure for Investigation Officers and Boards of Officers, dated, 30 September 1996

2. This legal review is provided in accordance with AR 385-40, paragraph 1-8c, and AR 15-6, paragraph 2-3. The Investigating Officer (IO), Brian West, was appointed on 1 Oct 02 to conduct an informal investigation pursuant to AR 15-6 and AR 385-40 into an accident occurring on 5 Aug 02 at the Family Housing Project at Fort Wainwright, Alaska. As part of the investigation, the IO considered releasable portions of the AR 385-40 safety investigation, interviewed necessary witnesses, and reviewed relevant authorities.

3. The IO made the following findings:

    On 5 Aug 02 a carpenter, Joel Wallender, employed by Osborne Construction on the Replacement Family Housing Project at Ft. Wainwright fell, and sustained serious injuries as a result of a fall. The injuries included head trauma, three broken ribs, loss of movement and feeling in the lower body, and level T-12 spinal injury.

    Mr. Wallender was engaged in removing fall protection anchors from around a stairway opening, approximately 6.5 feet X 9.5 feet in size, when he fell through the opening. He fell approximately 18.5 feet onto a concrete floor. The opening was not covered or barricaded as required in Engineer Manual (EM) 385-1-1 (Corps of Engineers Safety and Health Manual). However, the Fall Protection Plan prepared by Osborne Construction did not require such openings to be barricaded or covered if a personal fall protection system was used.
    Mr. Wallender was equipped with a personal fall protection system at the time of the accident. He was wearing a safety harness and shock-absorbing lanyard but was not "tied off". This conclusion is supported by the following: the locking D-ring which connects the lanyard and harness to a protective anchor was not found attached to the anchor, lanyard, or at the scene of the accident; and the shock absorbing lanyard was not deployed. (The shock absorbing lanyards are packaged by the manufacturer so that it is readily apparent when they have deployed.)

EXHIBIT H

ACE000216

CEPOA-OC                                                                04 November 2002
SUBJECT: Legal Review – AR 15-6 Investigation

    The fall protection anchors were not installed according to the manufacturers installation instructions. These instructions require that anchors be placed at least 6 feet from an edge. The anchors in this case were on the edge of the opening.

    The injured man has received fall protection training by a competent individual and was known to have properly used the personal fall protection system on previous occasions.

    Mr. Phil Salmon and others from the CO Fairbanks Resident Office failed to ensure that the Safety Plan submitted by Osborne Construction met the requirements of EM385-1-1, paragraphs 24.A.01 and 21.A.15 which require that openings into which persons can accidentally fall be covered or protected by a barricade. A waiver to the requirements of EM 835-1-1 may be requested by the COE through channels but no waiver was requested in the case. The Safety Plan submitted by Osborne Construction allowed for barricading such floor openings or using a personal fall arrest system. The Osborne Plan was approved by Mr. Salmon because the Plan was thought to provide a safe method of operation. The Osborn Safety Plan should not have been approved without including the requirement for covering or barricading openings as required by EM 385-1-1. This accident might have been avoided had the opening been covered as required by EM 385-1-1.

    The proximate cause of the accident was a failure on the part of the injured man to "tie off" in accordance with the Fall Protections Plan developed by Osborne Construction and on which he had been trained. A contributing factor was that the anchors were installed too close to the edge of the opening.

4. The IO made the following recommendations:

    The fall protection plan should be updated to require the use of guardrails or covers regardless of whether or not personnel are tied-off.

    The use of double headed nails is recommended as this would reduce the possibility of a hammer or pry bar slipping while removing anchors.

    When reviewing contractor safety plans, the plans should be reviewed for strict conformance with the Corps' safety manual, EM 385-1-1. Individuals responsible for approving safety plans should review the requirements of EM 385-1-1 and require compliance before approving contractor safety plans. Fall protection plans allowing for either guardrails or personal fall arrest systems should be disapproved.

ACE000217

CEPOA-OC                                                          04 November 2002
SUBJECT: Legal Review - AR 15-6 Investigation

    On future projects, identify past accidents and the sections in EM 385-1-1 that pertain to those accidents, and give special emphasis to those areas during plan review. This will capture lessons learned from past experiences.

5. [redacted]     *Ex 5 Atty Clie Privilege*

6. [redacted]     *Ex 5 Atty Clie Privilege*

7. Our POC is Mr. Finnigan at 753-2807.

*[signature]*

KEVIN FINNIGAN
Assistant District Counsel

ACE000218

# REPORT OF PROCEEDINGS BY INVESTIGATING OFFICER/BOARD OF OFFICERS

For use of this form, see AR 15-6; the proponent agency is OTJAG.

*IF MORE SPACE IS REQUIRED IN FILLING OUT ANY PORTION OF THIS FORM, ATTACH ADDITIONAL SHEETS*

## SECTION I - APPOINTMENT

Appointed by __Colonel Steven Perrenot__
*(Appointing authority)*

on __1 October 2002__ *(Attach inclosure 1: Letter of appointment or summary of oral appointment data.) (See para 3-15, AR 15-6.)*
*(Date)*

## SECTION II - SESSIONS

The *(investigation) (board)* commenced at __Alaska District__ at __0800__
*(Place)* *(Time)*

on __4 October 2002__ *(If a formal board met for more than one session, check here ☐. Indicate in an inclosure the time each session began and ended, the place, persons present and absent, and explanation of absences, if any.)* The following persons *(members, respondents, counsel)* were present: *(After each name, indicate capacity, e.g., President, Recorder, Member, Legal Advisor.)*

Brian D. West, Investigating Officer

The following persons *(members, respondents, counsel)* were absent: *(Include brief explanation of each absence.) (See paras 5-2 and 5-8a, AR 15-6.)*

The *(investigating officer) (board)* finished gathering/hearing evidence at __1200__ on __22 October 2002__
*(Time)* *(Date)*

and completed findings and recommendations at __1500__ on __22 October 2002__
*(Time)* *(Date)*

## SECTION III - CHECKLIST FOR PROCEEDINGS

| A. COMPLETE IN ALL CASES | YES | NO[1] | NA[2] |
|---|---|---|---|
| 1  Inclosures *(para 3-15, AR 15-6)* | | | |
| Are the following inclosed and numbered consecutively with Roman numerals: *(Attached in order listed)* | | | |
| a. The letter of appointment or a summary of oral appointment data? | X | | |
| b. Copy of notice to respondent, if any? *(See item 9, below)* | | | X |
| c. Other correspondence with respondent or counsel, if any? | | | X |
| d. All other written communications to or from the appointing authority? | X | | |
| e. Privacy Act Statements *(Certificate, if statement provided orally)*? | | | X |
| f. Explanation by the investigating officer or board of any unusual delays, difficulties, irregularities, or other problems encountered *(e.g., absence of material witnesses)*? | | | X |
| g. Information as to sessions of a formal board not included on page 1 of this report? | | | X |
| h. Any other significant papers *(other than evidence)* relating to administrative aspects of the investigation or board? | | | X |

*FOOTNOTES:* [1] Explain all negative answers on an attached sheet.
[2] Use of the N/A column constitutes a positive representation that the circumstances described in the question did not occur in this investigation or board.

DA FORM 1574, MAR 83    EDITION OF NOV 77 IS OBSOLETE.    Page 1 of 4 pages    USAPPC V1.10

ACE000219

| | | YES | NO[1] | NA[2] |
|---|---|---|---|---|
| | Exhibits (para 3-16, AR 15-6) | | | |
| | a. Are all items offered (whether or not received) or considered as evidence individually numbered or lettered as exhibits and attached to this report? | X | | |
| | b. Is an index of all exhibits offered to or considered by investigating officer or board attached before the first exhibit? | X | | |
| | c. Has the testimony/statement of each witness been recorded verbatim or been reduced to written form and attached as an exhibit? | X | | |
| | d. Are copies, descriptions, or depictions (if substituted for real or documentary evidence) properly authenticated and is the location of the original evidence indicated? | X | | |
| | e. Are descriptions or diagrams included of locations visited by the investigating officer or board (para 3-6b, AR 15-6)? | | | X |
| | f. Is each written stipulation attached as an exhibit and is each oral stipulation either reduced to writing and made an exhibit or recorded in a verbatim record? | | | X |
| | g. If official notice of any matter was taken over the objection of a respondent or counsel, is a statement of the matter of which official notice was taken attached as an exhibit (para 3-16d, AR 15-6)? | | | X |
| 3 | Was a quorum present when the board voted on findings and recommendations (paras 4-1 and 5-2b, AR 15-6)? | | | X |
| B. | **COMPLETE ONLY FOR FORMAL BOARD PROCEEDINGS** (Chapter 5, AR 15-6) | | | |
| 4 | At the initial session, did the recorder read, or determine that all participants had read, the letter of appointment (para 5-3b, AR 15-6)? | | | |
| 5 | Was a quorum present at every session of the board (para 5-2b, AR 15-6)? | | | |
| 6 | Was each absence of any member properly excused (para 5-2a, AR 15-6)? | | | |
| 7 | Were members, witnesses, reporter, and interpreter sworn, if required (para 3-1, AR 15-6)? | | | |
| 8 | If any members who voted on findings or recommendations were not present when the board received some evidence, does the inclosure describe how they familiarized themselves with that evidence (para 5-2d, AR 15-6)? | | | |
| C. | **COMPLETE ONLY IF RESPONDENT WAS DESIGNATED** (Section II, Chapter 5, AR 15-6) | | | |
| 9 | Notice to respondents (para 5-5, AR 15-6): | | | |
| | a. Is the method and date of delivery to the respondent indicated on each letter of notification? | | | |
| | b. Was the date of delivery at least five working days prior to the first session of the board? | | | |
| | c. Does each letter of notification indicate — | | | |
| | (1) the date, hour, and place of the first session of the board concerning that respondent? | | | |
| | (2) the matter to be investigated, including specific allegations against the respondent, if any? | | | |
| | (3) the respondent's rights with regard to counsel? | | | |
| | (4) the name and address of each witness expected to be called by the recorder? | | | |
| | (5) the respondent's rights to be present, present evidence, and call witnesses? | | | |
| | d. Was the respondent provided a copy of all unclassified documents in the case file? | | | |
| | e. If there were relevant classified materials, were the respondent and his counsel given access and an opportunity to examine them? | | | |
| 10 | If any respondent was designated after the proceedings began (or otherwise was absent during part of the proceedings): | | | |
| | a. Was he properly notified (para 5-5, AR 15-6)? | | | |
| | b. Was record of proceedings and evidence received in his absence made available for examination by him and his counsel (para 5-4c, AR 15-6)? | | | |
| 11 | Counsel (para 5-6, AR 15-6): | | | |
| | a. Was each respondent represented by counsel? | | | |
| | Name and business address of counsel: | | | |
| | (If counsel is a lawyer, check here ☐ ) | | | |
| | b. Was respondent's counsel present at all open sessions of the board relating to that respondent? | | | |
| | c. If military counsel was requested but not made available, is a copy (or, if oral, a summary) of the request and the action taken on it included in the report (para 5-6b, AR 15-6)? | | | |
| 12 | If the respondent challenged the legal advisor or any voting member for lack of impartiality (para 5-7, AR 15-6): | | | |
| | a. Was the challenge properly denied and by the appropriate officer? | | | |
| | b. Did each member successfully challenged cease to participate in the proceedings? | | | |
| 13 | Was the respondent given an opportunity to (para 5-8a, AR 15-6): | | | |
| | a. Be present with his counsel at all open sessions of the board which deal with any matter which concerns that respondent? | | | |
| | b. Examine and object to the introduction of real and documentary evidence, including written statements? | | | |
| | c. Object to the testimony of witnesses and cross-examine witnesses other than his own? | | | |
| | d. Call witnesses and otherwise introduce evidence? | | | |
| | e. Testify as a witness? | | | |
| | f. Make or have his counsel make a final statement or argument (para 5-9, AR 15-6)? | | | |
| 14 | If requested, did the recorder assist the respondent in obtaining evidence in possession of the Government and in arranging for the presence of witnesses (para 5-8b, AR 15-6)? | | | |
| 15 | Are all of the respondent's requests and objections which were denied indicated in the report of proceedings or in an inclosure or exhibit to it (para 5-11, AR 15-6)? | | | |

FOOTNOTES: [1] Explain all negative answers on an attached sheet.
[2] Use of the N/A column constitutes a positive representation that the circumstances described in the question did not occur in this investigation or board.

ACE000220

## SECTION IV - FINDINGS *(para 3-10, AR 15-6)*

The *(investigating officer)* (████), having carefully considered the evidence, finds:

On 5 August 2002, Joel Wallender, a carpenter employed by Osborne Construction on the Replacement Family Housing project at Ft. Wainwright (contract DACA85-01-C-0026) fell, and sustained serious injuries as a result. The extent of the injuries as of 17 October 2002, include; head trauma, three broken ribs, loss of movement and feeling in the lower body, and a level T-12 spinal injury (see EXHIBIT E).

Mr. Wallender was engaged in removing fall protection anchors from around a stairway opening, approximately 6.5 feet X 9.5 feet in size, when he fell through the opening. He fell approximately 18.5 feet onto a concrete floor. The opening was not covered or barricaded as required in Engineer Manual 385-1-1 (Corps of Engineers Safety and Health Manual). However, the fall protection plan prepared by Osborne Construction did not require such openings to be baricadded or covered if a personal fall protection system was used. Mr. Wallender was equipped with a personal fall protection system at the time of the accident. He was wearing a safety harness and shock absorbing lanyard but was not "tied off". This conclusion is supported by the following: the locking D-ring which connects the lanyard and harness to a protective anchor was not found attached to the anchor or lanyard or at the scene of the accident; and the shock absorbing lanyard was not deployed. The shock absorbing lanyards are packaged by the manufacturer so that it is readily apparent when they have deployed.

The fall protection anchors were not installed according to the manufacturers installation instructions. These instructions require that anchors be placed at least 6 feet from an edge. The anchors in this case were placed on the edge of the opening.

The injured man had received fall protection training by a competent individual and was known to have properly used the personal fall protection system on previous occassions.

Mr. Phil Salmon and others from the COE Fairbanks Resident Office failed to ensure that the safety plan submitted by Osborne Construction met the requirements of EM 385-1-1. EM 385-1-1 paragraphs 24.A.01 and 21.A.15 require that openings, through which a person could fall, to be covered or protected by a barricade. Paragraph 24.A.01 states; "All floor openings into which persons can accidentally walk or fall through shall be guarded by a physical barrier or covered." Paragraph 21.A.15b states; "Every stairway and ladder way opening shall be guarded on all exposed sides, except the entrance opening, by securely anchored standard guardrail; entrance openings shall be offset or provided with a gate to prevent anyone walking into the opening." A waiver to the provisions of EM 385-1-1is allowed provided a proper request is made and granted, however, in this instance a waiver request was not made. The safety plan submitted by Osborne Construction allowed for barricading such floor openings or using a personal fall arrest system. The Osborne plan was approved by Mr. Salmon because the plan was thought to provide a safe method of operation. The Osborne Construction safety plan should not have been approved without including the requirement for covering or barricading openings as required by EM 385-1-1. This accident might have been avoided had the opening been covered as required by EM 385-1-1.

The proximate cause of the accident was a failure on the part of the injured man to "tie off" in accordance with the Fall Protection Plan developed by Osborne Construction and on which he had been trained. A contributing factor was that the anchors were installed to close to the edge of the opening.

## SECTION V - RECOMMENDATIONS *(para 3-11, AR 15-6)*

In view of the above findings, the *(investigating officer)* (████) recommends:
The fall protection plan should be updated to require the use of guardrails or covers regardless of whether or not personnel are tied off.

The use of double headed nails is recommended as this would reduce the possiblitiy of a hammer or pry bar slipping while removing anchors.

When reviewing contractor safety plans, the plans should be reviewed for strict conformance with the Corps safety manual ,EM 385-1-1. Individuals responsible for approving safety plans should review the requirements of EM 385-1-1 and require compliance before approving contractor safety plans. Fall Protection Plans allowing for either guardrails OR personal fall arrest systems should be disapproved.

On future projects identify past accidents and the section in EM 385-1-1 that pertain to those accidents, and give special emphasis to these areas during plan review. This will capture lessons learned from past experiences.

### SECTION VI - AUTHENTICATION  (para 3-17, AR 15-6)

THIS REPORT OF PROCEEDINGS IS COMPLETE AND ACCURATE. *(If any voting member or the recorder fails to sign here or in Section VII below, indicate the reason in the space where his signature should appear.)*

_____  
*(Recorder)*

*Brian /s/*  
*(Investigating Officer) (President)*

_____   _____  
*(Member)*                          *(Member)*

_____   _____  
*(Member)*                          *(Member)*

### SECTION VII - MINORITY REPORT  (para 3-13, AR 15-6)

To the extent indicated in Inclosure _____, the undersigned do(es) not concur in the findings and recommendations of the board. *(In the inclosure, identify by number each finding and/or recommendation in which the dissenting member(s) do(es) not concur. State the reasons for disagreement. Additional/substitute findings and/or recommendations may be included in the inclosure.)*

_____   _____  
*(Member)*                          *(Member)*

### SECTION VIII - ACTION BY APPOINTING AUTHORITY  (para 2-3, AR 15-6)

The findings and recommendations of the *(investigating officer)* ~~(board)~~ are *(approved)* ~~(disapproved)~~ ~~(approved with following exceptions/substitutions)~~. *(If the appointing authority returns the proceedings to the investigating officer or board for further proceedings or corrective action, attach that correspondence (or a summary, if oral) as a numbered inclosure.)*

— None —

*/s/ Leon Herrera*

1 October 2002

MEMORANDUM FOR Mr. Brian West

SUBJECT: Appointment of Investigating Officer

1. You are hereby appointed an investigating officer pursuant to AR15-6 and AR 385-40, paragraph 1-8, to conduct an informal investigation into an accident occurring on 5 August 2002 at the Family Housing Project at Fort Wainwright, Alaska.

2. In your investigation, use the informal procedures under AR 15-6. You will make findings indicating the cause of the accident, the extent of the any injury or damage, and responsibility for the accident. You should include recommendations on any action which should be taken in response to the accident.

3. Submit your findings and recommendation in DA Form 1574 to my office within 10 days.

STEVEN T. PERRENOT
Colonel, EN
Commanding

ACE000223

**West, Brian D POA02**

| | |
|---|---|
| **From:** | Perrenot, Steven T COL POA02 |
| **Sent:** | Thursday, October 03, 2002 8:32 AM |
| **To:** | Perrenot, Steven T COL POA02; West, Brian D POA02 |
| **Cc:** | Hannon, James R POA02; Finnigan, Kevin POA02; Dalton, James C POA02; Gingras, Richard L LTC POA02 |
| **Subject:** | RE: Family Housing Project, Ft Wainwright, Investigating Officer |

Opps, fingers moving slower than the brain.

Request approved. 22 Oct!

COL P

-----Original Message-----
**From:** Perrenot, Steven T COL POA02
**Sent:** Thursday, October 03, 2002 8:31 AM
**To:** West, Brian D POA02
**Cc:** Hannon, James R POA02; Finnigan, Kevin POA02; Dalton, James C POA02; Gingras, Richard L LTC POA02
**Subject:** RE: Family Housing Project, Ft Wainwright, Investigating Officer

-----Original Message-----
**From:** West, Brian D POA02
**Sent:** Wednesday, October 02, 2002 3:19 PM
**To:** Perrenot, Steven T COL POA02
**Subject:** Family Housing Project, Ft Wainwright, Investigating Officer

Sir;

I am in receipt of a letter, signed by you and given to me by the Office of Counsel, appointing me as the Investigating Officer for an accident occurring on the Family Housing Project at Fort Wainwright. Your letter requests that findings be submitted to you by October 11. I am writing to you to request an extension until 22 October. David Finnigan, of the Office of Counsel, advised that I contact you directly to request this extension. Currently I am in a meeting through Thursday, 3 October, to resolve the "technical lead issue" for the ISO processes, and from 7-9 October I will be involved with ISO "Internal Auditor" training.

Please let me know if the extension is acceptable.

Thank you,

Brian West

ACE000224

1