## DECLARATION

I, Glenn D. Zahn, declare under penalty of perjury that the following is true:

1. I am a Project Engineer for the United States Army Corps of Engineers at Fort Wainwright, Alaska.
2. I was the Project Engineer/Quality Assurance representative for the Replacement Family Housing Project in Fort Wainwright, Alaska.  The Project's scope included the demolition of seven 8-plexes, the construction of seven new 4-plexes upon the original foundations, and the construction of eight new buildings with new foundations for 4, 5, and 6-plex units.
3. I worked closely with the independent contractor, Osborne Construction, who the Corps of Engineers hired to complete the Project.  I participated in the pre-construction conference and I helped review Osborne's Accident Prevention Plan.  I read Osborne's Accident Prevention Plan to check that it addressed every feature of work in their contract and hazards normally associated with each feature of work.  I do not know why Osborne's APP was approved with a deviation from the EM 385-1-1 fall protection requirements, but as I recall, it was already summer with a lot of projects starting or already underway.
4. Once construction began, I typically visited the work site once a day to discuss issues on the job with Osborne's Quality Control (QC) representative, Chris Seeley, or with Osborne's superintendent, Jeff Crawford.  At these meetings, we would try to resolve any new or ongoing problems and concerns.  I would stay onsite for as little as 15 minutes or as much as 3 hours, depending on my need to discuss issues with Osborne and my schedule.  I was responsible at the same time for another very large housing Project, which included the demolition of six 8-plex buildings and constructing six 4-plexes upon the existing foundations.  At the time of this accident I was the sole government construction representative on the ground for 30 million dollars of contract construction.
5. Unless an employee is about to injure him/herself or others, I would generally speak only to management about problems or concerns I spotted during my visits.  On this project, I never spoke to anyone besides Osborne's QC representative or the Superintendent about safety compliance and quality assurance issues.
6. On my visits for this Project, I did not see any holes or openings that were not covered or barricaded, except for the condition where floor joists were being covered with floor sheathing.  On one of my visits, I saw a team of Osborne employees installing floor sheathing on joists above the basement.  All employees were wearing approved safety harnesses and tied off and appeared to be observing proper safety procedures.  If this were not the case I would have notified Osborne management.
7. Mr. Wallender's accident occurred on August 5, 2002.  I was on annual leave from 1 Aug through 7 Aug 2002, but was called in for 1 hour on 6 Aug to meet with the accident investigators.  I was not onsite at the time of the accident, I was returning to Fairbanks from a hunting trip.  No one covered my responsibilities during this leave, but because Osborne Construction was in charge of managing and completing the Project, construction continued.

EXHIBIT I

1

8. I have worked with Osborne Construction on two subsequent jobs. They are one of the most professional contracting firms I have worked with during my career. I had no reason to suspect that Osborne's managers would not insure that its employees complied with the fall protection procedure.



Date: _____   Signature: _____
                              Glenn D. Zahn
                              Army Corps of Engineers, Wainwright Resident
Office, Fort Wainwright, Alaska


Declarations have the same legal force as affidavits.  28 U.S.C. § 1746

2