# ACCIDENT PREVENTION CORPORATION

11516 Country Club Road Woodstock, Illinois 60098
Tel (815) 337-7785 Fax. (815) 337-7795
safetyman@careful.com
www.safetyman.com

October 23, 2006

Peter R. Ehrhardt
Friedman, Rubin & White
215 Fidalgo Ave., Ste 203
Kenai, Alaska 99611

Re: Joel Wallender

Dear Mr. Ehrhardt:

The following is a preliminary report concerning the above referenced case. The opinions in this report are based upon my review of the following materials, as well as, my 30 plus years of experience within the safety and health profession. These opinions are subject to change during the process of discovery, or in the event that new evidence is presented:

        1. Compliant;
        2. Osborne Safety Plan;
        3. Preconstruction Meeting Minutes;
        4. FIOA Responses;
        5. Record Request;
        6. Medical Payments;
        7. Matt Emerson Drawings;
        8. Osborne DOL fax with safety orientations;
        9. Contract Clauses;
        10. Osborne Fall Protection Plan;
        11. DOL Osborne Reports;
        12. Life Care Plan;
        13. Summary of Safety Minutes;
        14. Color Photographs.

1

## FACTS

On or around August 5, 2002, Joel Wallender, a carpenter working for Osborne Construction on a project called "Replacement Family Housing Project" at Fort Wainwright, fell and sustained a serious injury. Wallender was found at approximately 9:15 AM by a worker sweeping the east end of the second floor deck. He was found 18½ feet below his last reported work area on a concrete basement floor. No one reported seeing the actual fall. Mr. Wallender was removing fall protection anchors from around a stairway opening approximately 6½ feet by 9½ feet when he fell through a floor opening which was not covered or barricaded as required by standards customs and practices within the construction industry. The fall protection anchors were place at the edge of the structure rather than 6 feet back as specified in the fall protection plan. The plan did not require floor openings to be protected when a personal fall protection system was utilized. Mr. Phil Salmon and others from the Corp of Engineers Fairbanks Resident Office have admitted that they failed to insure that the safety plans submitted by Osborne Construction met the requirements of the Corp of Engineers, as well as, other standards, customs and practices within the construction industry.

## OPINIONS

1. The Corp of Engineers violated OSHA, AGC, ANSI, NSC, their own safety program, as well as, the customs and practices within the construction industry when they failed to implement, communicate, monitor, and enforce an effective safety and health program on a project called "Replacement Family Housing Project" at Fort Wainwright. Such a safety and health program would have assured that fall protection anchors would be located a safe distance from floor openings. That such openings would be protected with proper covers, guardrails and/or safe, suitable and proper personal fall protection systems would be utilized. The planning for this job (job safety analysis JSA) must include the precise methods of fall protection for anyone approaching the edge or the hole. Above all, such a program from the Corp of Engineers would insist on "engineered" safety protection such as secured covers rather than rely on personal protective equipment for worker protection.

2. The Corp of Engineers violated the standards, customs and practices within the construction industry when they failed to follow their own safety and health program and anticipate the potential danger to humans from falls during the construction of a project called "Replacement Family Housing Project" at Fort Wainwright. All standards customs and practices within construction and general industry require floor openings to be barricaded with a standard guardrail and/or covered with secured covers.

3. The Corp of Engineers violated OSHA, as well as, their own standards when they failed to assure that proper inspections were conducted by competent persons. Such inspections would have identified the problem of removing fall protection anchors located adjacent to floor openings which were not barricaded with standard

2

guardrails and/or protected with secured covers at all times. Such inspections would also identify any problems regarding capability and/or compatibility of fall protection materials and equipment.

4. The Corp of Engineers violated OSHA when they failed to assure managers and workers were properly trained. Properly trained managers and workers would make certain that the fall protection anchors scheduled for removal would include proper fall protection measures to protect workers from falls.

5. "The Hierarchy of Safety & Health Controls", well accepted with the safety and health profession, requires the elimination of hazards and/or engineering controls to be implemented before guarding or personal protective equipment are utilized. The elimination of the floor opening hazard with a secure cover was the first choice for safety engineering.

6. Fall Protection (no fall possible) is far superior to fall arrest (you fall by hopefully don't hit the ground or another structure. The cover or guardrail for the hole was a reasonable and necessary precaution.

7. The human factor must be considered by safety management and this is especially important for floor openings into which a person can fall within buildings and structures. Human Factors experts have recognized the tendency for humans to believe/assume that their passage through buildings and structure will be safe and that responsible parties have taken appropriate action for their protection. Workers do not expect that holes will be unprotected and are accustomed to expect such hole will be protected by barricade and /or covers. Safety professionals understand that individuals such as Mr. Wallender will assume they would be protected by such measures. It is for this reason that the NFPA Life Safety Code, BOCA, OSHA, Corp of Engineers and many other safety standards require floor openings to be barricaded, and/or securely covered.

## APPLICABLE STANDARDS

Accident Prevention Manual for Business & Industry 10th Edition National Safety Council, Chapter 3 Hazard Control Program, To be effective, a loss, or hazard control program must be monitored, planned, directed, and controlled; it cannot simply develop on its own. Management needs to establish program objectives and safety policies and to assign line management responsibility for the hazard control program. Safety personnel and others must be able to perform specific steps to identify and control hazards. These steps are discussed later in the chapter. First, however, those charged with designing and participating in the hazard control program need to understand the nature of hazards, their effects on the work process, and the basic causes of accidents and ways they can be controlled.

U.S. Department of Labor, Occupational Safety and Health Administration "Safety and Health Program Management Guidelines. The Occupational Safety and Health Administration (OSHA) has concluded that effective management of worker safety and health protection is a decisive factor in reducing the extent and severity of work-related injuries and illnesses. Effective management addresses all work-related hazards, including those potential hazards, which could result from a change in worksite conditions or practices. It addresses hazards whether or not they are regulated by government standards.

Associated General Contractors "Manual of Accident Prevention for Construction" 8th Edition Chapter 1, 1-2 Planning the Accident Prevention Program. Planning begins with management's written commitment to accident prevention objectives. Management personnel should meet and agree on the need for an effective accident prevention program. When the decision has been made, management should decide who will oversee the program, how it will be accomplished, and to whom supervisory staff is to report. Following this decision, a concise safety policy should be disseminated to all managers and supervisors involved in construction operations. It is imperative that management be dedicated to the accident prevention program.

ANSI A10.38 Basic Elements of an Employer Program to Provide a Safe and Healthful Work Environment 3.4. Program Elements 3.4.1. The construction employer's safety and health program shall include each of the following elements to the extent that they apply to work to be performed: (6) At least daily inspections for the detection of hazardous conditions or hazardous work performance.

The Business Roundtable "A Construction Industry Cost Effectiveness Project Report" January 1982. Owners have long recognized and honored a moral obligation to provide a safe work environment to minimize injuries. The primary purpose of this study report is to demonstrate that owners have, in addition to their moral commitment, an economic incentive to help reduce the number of accidents that occur on their construction projects . . . One way that an owner can carry out this responsibility is to hire contractors who have a record of good safety performance.

Public Law 91-596  OSHA ACT
Section 5(a) (1) Each employer shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees
Section 5(a) (2) Each employer shall comply with occupational safety and health standards promulgated under this Act.

29CFR1926.20 General Safety and Health Provisions
(b)(1) It shall be the responsibility of the employer to initiate and maintain

4

such programs as may be necessary to comply with this part.
(b) (2) Such programs shall provide for frequent and regular inspections of the job sites, materials and equipment to be made by competent persons designated by the employers.

29CFR1926.21 Safety training and education
(b)(2)The employer shall instruct each employee in the recognition and avoidance of unsafe conditions and the regulations applicable to his work environment to control or eliminate any hazards or other exposure to illness or injury.

> *Note: Under OSHA an employer is a party who controls the worksite, creates hazards for his/her own or other employees, exposes his/her or someone else's employees to a hazard, or who has specific responsibility for correcting hazards on this worksite. CPL 2-0.124 Multi-employer Worksite Policy. The following is the multi-employer citation policy: Multi-employer Worksites. On multi-employer worksites (in all industry sectors), more than one employer may be citable for a hazardous condition that violates an OSHA standard.*

29CFR1926.501(b)(1) Unprotected sides and edges. Each employee on a working/working surface (horizontal and vertical surface) with an unprotected side or edge which is 6 feet or more above a lower level shall be protected from falling by the use of guardrail systems, safety net systems, or personal fall arrest systems.

29CFR1926.501(b)(2) Leading edges. (i) Each employee who is constructing a leading edge 6 feet or more above lower levels shall be protected from falling by guardrail systems, safety net systems, or personal fall arrest systems.

29 CFR 1926.501 (b) (4) (ii) Holes. Each employee on a walking working surface shall be protected from tripping in or stepping into or through holes (including skylights) by covers.

29 CFR 1926.501 (b) (15) Walking/working surfaces not otherwise addressed. Each employee on a walking/working surface 6 feet or more above lower levels shall be protected from falling by a guardrail system, safety net system, or personal fall arrest system.

29CFR1926.502 (k) Fall Protection Plan This option is available only to employees engaged in leading edge work, precast concrete erection work, or residential construction work. (1) The fall protection plan shall be prepared by a qualified person and developed specifically for the site where the leading edge work, precast concrete work, or residential construction work is being performed and the plan must be maintained up to date. (2) Any changes to the fall protection plan shall be approved by a qualified person. (3) A copy of the fall protection plan with all approved changes shall be maintained at the job site. (4) The implementation of the fall protection plan shall be under the supervision of a competent person. (5) The fall protection plan shall document the reasons why the

use of conventional fall protection systems are infeasible or why their use would create a greater hazard. (6) The fall protection plan shall include a written discussion of other measures that will be taken. (7) The fall protection plan shall identify each location where conventional fall protection cannot be used and alternative means of protection (8) Where no other alternative measure has been implement the employer shall implement a safety monitoring system in conformance with 1926.502 (h). (10) In the event an employee falls or some other related serious incident occurs the employer will investigate and implement changes.

29CFR1926.1051 (b) Employers shall provide and install all stairway and ladder fall protection systems required by this subpart and shall comply with all other pertinent requirements of this subpart before employees begin the work that necessitates the installation and use of stairways, ladders, and their respective fall protection systems.

The BOCA National Building Code Section 119.0 Unsafe Structures and Equipment 119.1 Conditions: All structures or existing equipment which are or hereafter become unsafe, unsanitary or deficient because of inadequate means of egress facilities, inadequate light and ventilation, or which constitute a fire hazard, or are other wise dangerous to human life or the public welfare, or which involve illegal or improper occupancy or inadequate maintenance, shall be deemed an unsafe condition.

Accident Prevention and Site Safety Plan Osborne Job no. 2173 U.S. Army Engineer district, Alaska Northern Alaska Area Office. Fall Protection Plan 1.) Each employee on a Walking/working surface with an unprotected side or edge which is greater than 6 feet or more above a lower level shall be protected by the use of a guardrail system of personal fall arrest system. 3.) Each employee on a walking/working surface shall be protected from falling through openings to lower levels by the use of guardrail systems, cover or personal fall arrest system. 4.) Covers for openings and holes in floors, roofs and other walking/working surfaces shall meet the following requirements. c. All covers shall be secured when installed so as o prevent accidental displacement by the wind, equipment or employees. d. All covers shall be color coded or marked with the word "HOLE" or "COVER" to provide warning of the hazard.

EM385-1-1 Paragraph 24.A.01 All floor openings into which persons can accidentally walk or fall through shall be guarded by a physical barrier or covered.
EM385-1-1 Paragraph 21.A.15b Every stairway and ladder way opening shall be guarded on all exposed sides, except the entrance opening, by securely anchored standard guardrail; entrance opening shall be offset or provided with the gate to prevent anyone walking into the opening.

6

## SUMMARY

The Corps of Engineer had an obligation for overall safety on the jobsite. They had the responsibility under OSHA, their own safety program, as well as, customs and practices within the construction industry to assure frequent and regular inspections by competent persons who would be trained to identify the well-recognized hazard of unguarded floor openings. The Corps of Engineers admits they failed to enforce their own standards, as well as, customs and practices to protect floor openings on a project called "Replacement Family Housing Project" at Fort Wainwright. The failure of the Corp to take reasonable and necessary precautions and to follow the well-established safety hierarchy to implement engineered controls for the safety of workers on their project was the cause of this injury. Certainly a Corps of Engineers would understand the value of engineered safety systems.

Sincerely,

Frank Burg, Certified Safety Professional