PETER R. EHRHARDT
Friedman, Rubin & White
215 Fidalgo Ave., Ste. 203
Kenai, AK  99611
Phone:  (907)283-2876
Fax:  (907)283-2896
ehrhardt@kenai.com

Attorney for Plaintiff


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA


| | |
|---|---|
| JOEL WALLENDER,<br><br>        Plaintiff,<br><br>   vs.<br><br>UNITED STATES OF AMERICA,<br><br>        Defendant. | )Case No.: Case No. 3:05-cv-263-JKS<br>)<br>)**PLAINTIFF'S OPPOSITION TO UNITED**<br>)**STATES' MOTION TO CORRECT AN**<br>)**INCORRECT FACTUAL ASSUMPTION IN THE**<br>)**SUR-REPLY AT DOCKET 31**<br>)<br>)<br>)<br>) |

On February 13, 2007, counsel for the United States ("government's counsel"), via e-mail, informed plaintiff's counsel that there was an error in plaintiff's sur-reply at page 12.[1]  Specifically, government's counsel complained that plaintiff had mistakenly identified government employee Glenn Zahn as "presumably the QC" mentioned in the government's Exhibit J.[2]  By way of explanation, government's counsel passed along the following information from the CoE's attorney:

"Osborne and every other construction contractor are specifically required by the contract to have a CQC.  That stands for

---

[1] Affidavit of Peter Ehrhardt, Exhibit 1.
[2] *Id.*

Contractor Quality Control.  The counterpart for the Government
is referred to as the QAR, or Quality Assurance Representative.
The Government does not have a QC.  It has a QAR."[3]

Based on this representation alone, government's counsel asked plaintiff's counsel to "please correct this error."[4]

The Daily Reports which include reference to the unidentified "QC" were produced to plaintiff for the first time in conjunction with the government's reply brief only one month ago.  Plaintiff has had no opportunity to conduct discovery or investigate the facts contained in these newly produced documents.  The "QC" who noticed the fall protection violations before Zahn left on vacation was not identified specifically by name.  Given the statements in Zahn's original declaration, his daily presence at the site, the fact that he has been described as the government's representative in regard to "quality" at the site, and the fact that he had not yet left on vacation, plaintiff reasonably inferred that the "QC" was Zahn and that he was aware of the fall protection violations before he left on vacation.  Plaintiff believed these inferences of fact to be reasonable given the evidence presented at that time.  Therefore, agreement between the parties could not be reached for an unopposed motion to "correct" or clarify the record.

The government now submits a motion "to correct" the statements made in plaintiff's sur-reply – in effect a 'sur-sur-reply.'  In support of its motion, the government submits a *second* declaration from Glen Zahn,

---

[3] *Id.*
[4] *Id.*

obtained on February 16, 2007 - six months after the government's original motion to dismiss and one month after the government's reply were filed.  The new declaration contains not only information regarding the acronyms used to describe various government and contractor quality control and quality assurance representatives, but also contains *new* statements of fact regarding Zahn's activities, or alleged lack of them, in regard to direction of the contractor's employees and observance of safety violations at the project site.

Based on this newly produced declaration of a government employee who has not yet been deposed, the government – as the moving party in a motion to dismiss - asks the court to "accept as true that Mr. Zahn was not the QC ("Quality Control") referred to in Exhibit J" and to "accept as true that Mr. Mr. [sic] Zahn did not observe the safety violations regarding the fall protection which were discussed in Exhibit J."[5]  The government's request is inappropriate and should be denied.

### ARGUMENT

**A.**    **The Government's New Evidence Presents More Questions of Fact than it Answers and May Not Be "Accepted as True" by this Court**

On a motion to dismiss, the court accepts the facts alleged in the plaintiff's complaint as true.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990) *citing* Shah v. County of Los Angeles, 797 F.2d 743, 745 (9th Cir. 1986).  In ruling on a motion for summary judgment, the court is required to draw all reasonable inferences of fact in favor of the nonmoving party and

---

[5] *See* Government's Proposed Order.

against the movant.  Clabaugh v. Bottcher, 545 P.2d 172 (Alaska 1976).  Thus, the court cannot "accept as true" a moving party's assertions regarding genuine issues of material fact where the nonmoving party has drawn a reasonable but conflicting inference from the same set of facts or evidence.

In addition, the government's request is an inappropriate attempt to obtain an advance ruling on a disputed issue of fact which was fully briefed in the motion to dismiss currently pending before this court.  The government has failed to cite a single precedent to support its request.

In fact, taken in the light most favorable to the plaintiff, Zahn's second declaration raises more questions of fact than it answers:

- First, the government has not supplied a declaration from the author of the Daily Report in question.[6]  Thus, we don't have a definitive statement as to who or what the author meant by "QC."  According to Zahn's declaration, the Daily Reports and common sense, "QC" could be a reference to Chris Seeley or to "QC Jim Frink" or a general reference to an unknown person the author was unable to identify at the time the report was written or simply a generic reference to quality control.  The government has presented no evidence from the author of the Daily Report in question, but wants this court to say *definitively* that the "QC" referenced wasn't Zahn based purely on Zahn's declaration that "QC" is "typically" and "usually" used to describe a contractor quality control representative.  The court cannot possibly make this determination based on the information supplied to date.

- Second, Zahn's recollection in regard to his whereabouts on the date the fall protection violations were observed (July 31, 2002) is not unequivocal.  He specifically states that he does not recall what he was doing on this date.[7]  Yet, in the same sentence, he claims that he did not observe the violations.[8]  Zahn's selective recollection is subject to skepticism and doubt by a reasonable jurist.

---

[6] Zahn claims that the author is contractor representative Chris Seeley, the "CQC" at the site. Government's Motion to Correct at Exhibit N, paragraph 3.
[7] *Id*. at paragraph 4
[8] *Id*.

- Third, in his second declaration, Zahn actually *admits* that he was aware of safety violations issued to two carpenters for lack of fall protection as early as August 1, 2002, four days before plaintiff's accident.[9]  The fact of Zahn's pre-accident knowledge regarding fall protection violations at the site, coupled with his constructive or actual knowledge of the faulty safety plan, only serves to enhance plaintiff's argument that Zahn knowingly failed to protect plaintiff from the consequences of the faulty fall protection plan, i.e. Zahn has constructive or actual knowledge that the plan did not call for covers or barricades over floor openings and that certain workers had not been using personal fall protection – yet he did nothing to correct the faulty fall protection plan or warn the workers.

- Fourth, Zahn's declaration presents a new question of fact regarding the government's presence and control at the site.  Zahn's declaration explains that "Quality Control" is a contractor function and responsibility,[10] whereas Zahn is employed by the government as a "QAR" or "Quality Assurance Representative."[11]  Zahn states "[t]he government employs QARs for Quality Assurance" ("QA").  Interestingly, however, Zahn's new declaration introduces new information regarding a person identified in the Daily Report marked Exhibit J only as "Smitty of DPW."   Zahn says Smitty "was an elderly DPW employee assigned part-time to assist with QA work."[12]  Zahn does not say "QC" work; he says "QA" work.  According to Zahn's declaration, QA work is the government's function and responsibility.  Thus, it is reasonable to infer that Smitty was assigned to this project *to assist the government* with QA work.[13]  Exhibit J indicates that Smitty was on site monitoring quality control and safety compliance issues as well as giving specific directives to contractor employees re: safety compliance.[14]  Taken in the light most favorable to the plaintiff, it is reasonable to infer from Zahn's declaration and the information contained in Exhibit J that Smitty is

---

[9] Government's Motion to Correct, Exhibit N at paragraph 4.  Although the government contends that Zahn was on vacation (and Zahn claims that he was driving north on the haul road on a hunting trip), Zahn also admits that he was working on this date, i.e. reviewing the August 1, 2002 Daily Report.

[10] Government's Motion to Correct, Exhibit N at paragraph 3.

[11] *Id.*

[12] *Id.*at paragraph 2.

[13] Zahn does not say specifically who "assigned" Smitty to assist the government with QA work, who directed Smitty's activities at the site or who Smitty reported to or met with in regard to his activities at the site.  To the extent that the government is 'out-sourcing' its QA responsibilities under the contract, this information is subject to discovery and of significant interest to this case.

[14] Government's Reply at Exhibit J, ACE 003534-3535 (Under heading "Quality Inspections Performed This Date": "Smitty of DPW observed and notified OCC" regarding quality control issues with building construction; under heading "Safety" Smitty directed a welder to put up a weld screen as a safety precaution to protect other workers at the site from possible arc flash.)

assisting the government with QA work at the site and that Smitty's assistance includes supervision and direction of contractor employees with respect to safety compliance issues. [15]

- Finally, Zahn's second declaration attempts to play down the significance of the first declaration in regard to his extensive daily involvement at the site, his knowledge of the safety plan and his involvement in safety compliance issues generally. Zahn's first and second declarations present conflicting pictures of the nature of his activities at the site and create their own genuine issues of material fact regarding the government's daily involvement.

The government's continued submission of newly obtained or discovered evidence to contradict or rebut the reasonable inferences drawn from previously submitted 'new' evidence highlights the fact that there are many genuine issues of material fact. Clearly, discovery is needed to flesh out the details of the government's activities and control at the site.

As discussed more fully in Plaintiff's Sur-reply, discovery in this case has not yet begun.[16] The retained control decisions cited by the government in their reply brief were supported by "extensive deposition testimony" submitted by both parties and "voluminous and uncontradicted testimony" that the contractor acted alone without the government's involvement or direction in every aspect of the actions which led to the plaintiff's injury.[17] Here, the government has presented only two conflicting, self-contradicting, un-cross-

---

[15] N.B. The government attempts to distance Smitty from the specific building where plaintiff's accident occurred. *See* Exhibit N at paragraph 2. However, whether or not Smitty was specifically assigned to Building 1410, Smitty's QA work as the government's assistant is significant in regard to the government's quality control and safety compliance role under this contract and at this project site generally. The government has presented no precedent which would suggest that the government's daily involvement must be tied to a particular building within a project for purposes of the retained control doctrine.
[16] Plaintiff's Sur-reply at 14-15.
[17] *Id.*

examined declarations procured by the government from a government employee during the course of pre-discovery motion practice.  As a result, the many reasonable factual inferences which can be drawn from the declarations are contradictory and disputed by the parties.

B.    Government's 'Moving Target' Briefing and Submission of Additional New Evidence and Additional Briefing Under the Guise of a Motion to Correct is Inappropriate

From the filing of its original motion to the present motion for correction, the government's argument has been a moving target.  The government's original motion to dismiss was based on the simple contention that the contract between the parties did not indicate sufficient retained control by the government to create a tort liability cognizable under the FTCA. Attached to its original motion, the government submitted a sworn declaration from Glenn Zahn which described extensive daily involvement at the project site, intimate involvement with and knowledge of the site's safety plan, and a general observance and awareness of safety compliance.[18]

In its reply, however, the government changed course, submitting 'newly discovered' evidence to show that Zahn was *not* present at the site or directing the contractor's activities with regard to safety at the site for three work days preceding plaintiff's accident and on the day of the accident.  Recognizing that submission of these 'new exhibits' created a new argument not presented in its original motion, the government noted that it would not oppose 'a rebuttal' of

---

[18] See Plaintiff's Opposition at 9-10.

any argument referring to the new exhibits.[19]    Accordingly, plaintiff was allowed to submit a sur-reply.  In his sur-reply, plaintiff reasonably inferred from the Daily Reports that Zahn was aware of fall protection violations at the site before the plaintiff's accident and may himself have been involved in the reporting of the violations.[20]

Now, the government submits this motion "to correct" the reasonable inferences drawn in plaintiff's sur-reply based on yet more new evidence as expressed in Zahn's new declaration.  The government's motion "to correct" inappropriately creates another series of three substantive briefs on top of the original four briefs already submitted as part of the underlying motion to dismiss.  As with the 'new' evidence submitted in support of the Government's Reply, the evidence filed in support of the government's present motion "to correct" has created more questions and genuine issues of material fact than it has resolved.  At some point, the briefing of the government's motion to dismiss must end.

## CONCLUSION

For the reasons stated above, it is not appropriate for this court to "accept as true" the facts contained in Zahn's second declaration.  The government's involvement at the site is a genuine issue of material fact for the jury.  The government's motion "to correct" the factual inferences in plaintiff's sur-reply should be denied.

---

[19] Government's Reply at 11, footnote 3.
[20] Although Zahn denies any involvement in reporting the violations, he admits that he was indeed aware of the fall protection violations before plaintiff's accident.  Government's Motion to Correct, Exhibit N at paragraph 4.

RESPECTFULLY SUBMITTED this 8TH day of March, 2007.


/s/ Peter R. Ehrhardt
PETER R. EHRHARDT
Alaska Bar No. 8006016
Attorney for Plaintiff


CERTIFICATE OF SERVICE:

I, the undersigned, hereby certify that
on this 8TH day of March, 2007, I
caused to be served by EMAIL a true
and correct copy of the foregoing &
all attachments & exhibits.

/s/ Nathan Birchfield
NATHAN BIRCHFIELD

PARALEGAL FOR PETER R. EHRHARDT